Morning, Your Honor. Myron Moskovitz for the Appellant Uthe Corporation. I'd like to reserve five minutes for rebuttal, if I could. This case began quite a while ago, in 1993, when Uthe filed suit against the respondent here, Aetrium, along with some other people. This arose out of Uthe's business, which is selling semiconductor parts and making them. And they have a subsidiary in Singapore that they've been using for years to sell their own parts and Aetrium's. Aetrium's was their biggest supplier. They had a long-term contract with Aetrium, 20 years. And their employees in Singapore concocted a scheme to basically steal their business. They were going to divert it all to a separate corporation they set up. And since Aetrium was the largest supplier, they call up Aetrium in the United States and say, Why don't you guys go along with us? And they would. They did. Aetrium made a secret deal to change the contract from 20 years to basically terminable on 30 days' notice, which they did like that. And they made a new deal with the thieves' new corporation. Finally, Uthe finds out about it. They file suit in San Francisco under RICO against all these people. And there's a motion to stay the litigation by the Singapore defendants because they had an arbitration provision in their purchase agreement, that they actually purchased the subsidiary for like 3 million Singapore dollars when it was valued at 14 million. So Uthe objected. They say, We've got a RICO action here for trouble damages against all these people. We want it heard in district court in San Francisco. Judge said, No, no, let's send it off to arbitration. I hate to do this, but I think we're all familiar with the story. I think we know what happened in the arbitration. I think the issues that we face now is whether you still have the claim for the trouble damages or whether it's satisfied by the arbitral award. And what do we do about the secondary question? If you are entitled to trouble damages, there's still this defense of whether you've proved a continuity requirement of RICO. So I think we need to get to those. All right. Let me jump to that then. The first issue, the trial judge says when Uthe comes back to San Francisco to try to get the troubling against Atrium, trial judge says, Basically, you already got a lot of money. You got nine million dollars in this in the Singapore award. It was paid. And that's enough. There was a mention of Judge Tashima's ruling in an almost identical case when he was on the district court. And trial judge in this case says, No, I don't like that. I'm not going to go with that. And as we point out in our brief, all the cases are against that. The RICO was derived from the Sherman Act. Let's say that you are entitled to the trouble damages and you cross that hurdle. Yeah. The big hurdle then, I suppose, is can you prove that you're entitled to RICO damages because you satisfied the continuity requirement? I think that's the heart of the matter. Yeah. The declarations introduced on the summary judgment motion show all the elements of RICO. The only one that they're contesting is the continuity requirement. The trial judge didn't rule on it. And in their respondent's brief, they claim that the evidence shows that this conspiracy was intended to end as soon as these people got control of the Singapore subsidiary. And they just leave out evidence that says that's not what happened. So what is that evidence? Okay. I'll point it to you. Catherine Yip was one of the Singapore defendants. I think she was the sales manager there. And she came up with this scheme. And yet she provided the key evidence here. And that there's two ways to satisfy the continuity requirement. It can be open-ended. It can be closed-ended. Open-ended means it's going to go on indefinitely. And Catherine Yip says, and this is in the excerpts of the record on pages 130 and 131, taking over UFA Singapore, which is the subsidiary, was never the end goal of the conspiracy. It was simply a step in the plan to profit by keeping all of the business and profits from that company for ourselves. Once they took it over, what's left to do? In other words, how does the scheme continue once they achieve that takeover? Well, let me answer that two ways. First of all, under the cases, the question isn't whether the conspiracy was cut off. That doesn't make it not open-ended. You know, you've got a group of people that say, let's set up a drug cartel. And it's going to be big in scope. And it's going to last as long as we can make profits. The next day, they're all arrested. All right. And that's the end of it. Does that mean it's not an open-ended conspiracy? Of course it is. The government just happened to cut it off by their, you know, assiduous action. But that's an open-ended conspiracy. This is different here. The goal is achieved. It's not a matter of the government cutting anything off. The goal is achieved. They've taken over the company. In six months, they achieve the goal. It's over. But look, the whole purpose of RICO is to stop racketeering. Racketeering is to have an ongoing criminal enterprise. In the example I gave, it's an ongoing criminal enterprise. The same is true here. Catherine Yip said the planned partnership with Atrium, including the servicing of the youth of Singapore clients, was intended to continue indefinitely into the future. Let me ask you this, counsel. Yeah. At the time that Judge Alsop severed and stayed this matter, as I recall, only a portion of the defendants named in the original complaint were involved in the arbitration. Is that correct? I think that is right. Okay. So assuming arguendo that we say there's an opportunity to go back before the district judge and prove up treble damages, if you can satisfy the continuity requirements, you've got some defendants that are back in the case who were not involved in the arbitration. What role, if any, does that play in an ability to satisfy the continuity requirement? I don't understand the connection. You have the Singapore – the company that was acquired there, basically. Right. The Singapore action and arbitration that dealt with only a portion of the defendants that were named in the original complaint. Okay. So you have something of a cutoff period here, but you have some people where there's been no judicial or arbitral decision respecting their actions, whether there's something ongoing on their part. I'm asking you whether there's anything that you can tell us about the defendants who were not part of the Singapore arbitration that might play some role in possible continuation of the RICO-type actions. I don't know. I know that my client, Uthe, intends to proceed solely against Atrium at this point, and that's why we have this appeal. They're not pursuing the other ones. They were paid the compensatory damages of $9 million. Now they just want the RICO troubling that Congress provided. Well, let me ask you this question. Yeah. Who should determine this continuity question? Should we remand to the district court to hear it, or is it a summary disposition in the sense that there are no disputed issues of fact? It was fully briefed. Should we do it, or should we remand? After all, you've waited 20 years as it is. Where do you think this should happen? I think it should be decided by the jury. That's what the cases say. This is normally a question of fact. So you think it should be remanded back for a trial? You think there are disputed issues of fact? Absolutely. You think it should not have been summary judgment, and you think it should be a jury trial? Absolutely. Yeah. I mean, the cases say generally this is an issue of fact continuity. But are there fact issues in dispute here? I think your adversary argues there's really no fact issues in dispute. Right. It's all over in six months. They're welcome to argue that to the jury. I mean, we're not moving for summary judgment. No, no. I understand that. So this is a jury issue on both grounds. The open-ended conspiracy and the closed-end conspiracy. Because Catherine Yip also testified. See, they're claiming the conspiracy lasted only a few months until they brought the company. Catherine Yip testified. Counsel? Counsel? Yeah. Forgive me. You're really not answering Judge Sullivan's question. She asked you whether we should send this back to the district court to make the determination. Judge Alsop specifically said he wasn't going to. Right. You deal with the issue because he was going on the other basis. I gather since you're talking about juries that the answer to your question is yes, you believe that this matter, assuming that we approve going forward on RICO, should be sent to Judge Alsop to make a determination in the first instance, whether before a jury or whether it was him or whatever, that he should do it, not us. Is that correct? Well, I mean, there's two possibilities. And it's not clear to me which we are proposing. I think he should send it to a jury. But he really can't do that yet because there's a pending motion for summary judgment on that ground that he didn't reach that ground. Right, right. He would decide the summary judgment first. And if he decided there's no continuity element, you'll be back here. I know. That's 20 years is a long time. We're talking about another three or four. That's my point. He'd first have to decide the summary judgment motion. And it may be that he finds no continuity, throws it out again, you're back here. That's the problem. I know. And that's why I asked who should decide that. If there are no disputed issues of fact, should we take it, or can you tell me what issues of fact are really in dispute? Well, if I knew how you were going to rule on that, I could answer that a little better. But I don't. I must confess, I'm baffled that you are ruling out the role of the defendants who were kind of parked on the side during this 20-year period, what role, if any, they might play in the continuity issue. You mean the Singapore defendants? No, no. The non-arbitral. The non-arbitral defendants is what he's saying, the non-arbitral. Right. In other words, let's just say hypothetically that there were 20 defendants. Yeah. Ten of them involved in the arbitral action. Yeah. Ten are sitting out on the side. You're saying you're not going after them. Look, I can represent to the Court that my client is interested in pursuing the case only against Atrium at this point. And there's been no involvement of those other defendants. There's been no effort to go after them. And that's what we're talking about here. You have to run your own railroad council. Yeah. Are you going to save any time? Yeah, I did. I will. Thank you. Okay. Let's hear from the other side. Thank you, Your Honors. May it please the Court. Archana Nath, Counsel for Appellees, Atrium Incorporated, and Harry Allen. It sounds like the Court is really interested in talking about continuity, so I'll just jump right to that. I was ready to talk about single recovery as well. Well, I want to make sure I understand your position on the single recovery issue. Of course. Are you still saying they're not entitled to any further recovery beyond the arbitral award? Yes, Your Honor, we are. And the reason is because there are three things that are true in this case, three facts that are not disputed. And those three facts are that the injury for which they're seeking redress in this action is the exact same injury as in the Singapore arbitration. But not the exact same remedy. Not the same remedy, but the same injury, and that's critical for the law. So it's the same injury. There has already been an adjudication on the merits of the loss that the USA suffered for that injury by the Singapore arbitration. Regardless of whether a court here would agree, there has already been a tribunal that has determined the amount of that loss. But it couldn't reach treble damages, right? Well, the laws, it's not clear that treble are available there. There are punitive damages available. But there hasn't been an argument here that Singapore is an inadequate forum for determining somebody's rights as an American company. But that's not really the issue, is it, Counsel, with respect? I don't think I saw anything that suggested that the Singapore arbitration was irregular or anything like that. The reality is only a part of the defendants were there. As I understood it, there is no ability to get treble damages under Singapore law. There are some things that have to be proven up to get that under RICO. So clearly aspects of what would otherwise occur under a RICO action did not occur. In addition, you have the remedial function of RICO that has not been satisfied here. It would be a complete windfall to some degree for your client to get off scot-free just because you had an arbitration clause. It wouldn't be the first company that's done that, by the way, but we're not talking about Concepcion right now. We're talking about something different. Sure, and just to be clear, so our clients didn't enter the arbitration agreement. So this is just an action against our clients because there was no arbitration agreement with them. What's key in this case is that there was actual satisfaction of the adjudicated damages. So nobody forced the USA to take the steps that it took to extinguish the action. The law is very clear that, again, if three things are there, identical injury, adjudicated damages, and satisfaction of that adjudicated damage award, your cause of action is extinguished. It doesn't matter if you could have gotten more in another action. But your cause of action is under RICO. That cause of action was not adjudicated in the arbitration. It may be helpful if you moved on to the continuity problem in case we disagree with you and think that the single recovery doesn't apply. Understood. And the last thing I'll say is that there are lots of places that are clear that it doesn't matter the form of the cause of action. It could be for several different things. And while you had the right to sue for all of those different causes of action, once you choose to satisfy the judgment on one form of cause of action, so if Youth USA had gotten both judgments without satisfying either, one in Singapore and one in here in the U.S., Youth USA could have chosen which one to satisfy. Would that have been true in the United States? Let's just say hypothetically that there were an arbitration clause in the United States and something substantially identical to here occurred, but there was no litigation of the RICO claim, say that it specifically was accepted out. Would the same be true in that case as what we have here? If there are two different cases in the U.S., you're saying, so maybe one's an arbitration and one is regular. So as long as one of the actions, as long as the action that's been satisfied in full, right, as long as that action, the court or whatever tribunal said, this is what we determine to be the full amount of your loss under our rules. But like my colleague pointed out, it's the full amount of the loss based upon non-RICO law. It's a very different cause of action. Sure. Well, let's think about it this way. So my last point, and then I will move on to the other one unless you have more questions, but think about it this way. There could be two different states, for example, California and Minnesota, and maybe they calculate damages. Maybe it's not RICO, but maybe they calculate damages differently for something like loss of a business. Maybe somebody uses market value. Maybe somebody uses lost profits, right, or juries. Juries return different verdicts all the time. The same case could be presented to one jury. It could be presented to another, and the damage amounts could be vastly different. That's allowed. You're allowed to keep both of those actions going because it's not the judgment that matters. But in those actions, you may have gotten $100,000 in Minnesota, and you may have gotten $200,000 in California. Both of those were determinations that those amounts were the full amount for those losses, even though they're different. This court determined it was this much. This court determined it was this much. But you're really talking about a measure of damages analysis, and I think RICO is different than just the way you measure damages. So in your example of two different states, they measure damages differently, but it's the same damage. RICO has a treble damage provision for public reasons, and that's why Congress did it. So I think we could distinguish your example. But, sure, and, you know, I'll just say punitive damages are a good similar thing to look at, right? And punitives are even actually personal to a defendant, and there are several cases that we cite in our brief that actually say, look, you could have gotten punitives from defendant number two, but because you went after defendant number one, even though punitives weren't available against defendant number one, once you satisfied that full judgment against defendant number one, because that court decided that that was the full amount of loss, even though punitives weren't there, your cause of action was immediately, immediately extinguished. What about antitrust damages? Antitrust damages are similar, and, again, they're similar to RICO. And, again, if it's a settlement circumstance, because nobody's adjudicated the amount of loss, then the cases that the U.S.A. cites show that, yes, you treble first, and then you offset the settlement amount, because there's been no adjudication of damages and no satisfaction of that adjudicated amount. Okay. Let's go to the continuity issue. Sure. So under the continuity issue, we've argued since the beginning of this case that Youth USA cannot establish continuity, and that includes our motion to dismiss, where the Court looked at that issue and also the summary judgment motion. And the Court was asking, Your Honor, was asking whether this Court should make the determination, you know, this Court is not afraid to affirm a dismissal of a RICO claim for lack of continuity when the facts don't support it. But it's not a matter of affirm. The district court here never reached that issue because of the single recovery rule, right? Correct. So the district court hasn't ruled. That's true. But this Court, for example, in Ward v. Kroger, which was a RICO continuity case, this Court has expressly rejected the argument that it can't address an issue just because the district court didn't. It may not be that we can't, but the question is, should we? Isn't it the better practice always to have the district court first make the determination? You know, this is not a circumstance like the Singleton case cited in the New Mexico case that Youth USA. You know, in some cases, in the Singleton case, the defendant hadn't even answered the complaint yet. In this case, we had a full discovery. We've had three dispositive motions. We have a very complete record, and all of the facts are available in the record and are there and don't need somebody else to decide because the facts are not disputed and they show as a matter of law that continuity can't be established. So let's talk a little bit about why there is no continuity in this case. You know, what matters for closed-ended continuity are the predicate acts themselves. So that's really important. You know, this U.S. Supreme Court has held that. This court has held that. In H. J. Inc., the Supreme Court has held that. It is actual predicate acts that matter for continuity purposes. And in this case, all of the predicate acts that are even alleged occurred between, for our defendants, between July of 92 and October of 92. The earliest allegations of predicate acts are April of 92. So even with that, it's three to six months. There's plenty in the record that shows that there are no other predicate acts alleged outside of this time period, not one, either before or after. So any conclusory argument that there were predicate acts beyond that time, there's just nothing in the record other than arguments in a brief. So, you know, this Court knows its own precedent, but there's not a single case out there of finding that six months or three months is a substantial period of time under closed-ended continuity. We've got the Religious Tech case where they found, where this Court found six months is not enough, the Ward case where this Court found five months are not enough. And even recently, this Court in Kearney confirmed that the three-month scheme in Sun Savings, even though it was found to be open-ended, wouldn't have been enough for closed-ended because it wasn't a substantial period of time. Now, open-ended continuity is the bigger fight here. But predicate acts, again, the focus is predicate acts here. And the predicate acts must, by their nature, project into the future. And in other words, the U.S. Supreme Court and this Court have confirmed that the actual acts must include a specific threat of repetition themselves. That's what your adversary argues, that the mail and wire frauds are part of the racketeering enterprise which continues to exist. It's not as if they take over the business and they stop being sort of wrongdoers. They're now an operating criminal enterprise, so to speak. And it's inevitable that you're going to operate a business, you're going to engage in mail and wire. Well, you know, this is the problem with turning a civil dispute into trying to put it into RICO allegations, right? Blame Congress. But, you know, so first of all, the record is just filled with – this is not our evidence, right? Because my atrium defendants do not believe that they did any of these acts. So the record is filled with Youth USA's evidence, its affidavits, its testimony of witnesses, where the goal was singular. The goal was taking over Youthy Singapore. Once that was done, there's nothing else. They own Youthy Singapore. You know, and continuing to suffer harm is not considered something that can extend the time period for continuity. Courts have explicitly held that. So, you know, here we've got – I mean, even Mr. Moskowitz just said that the plan was to take all the business from Youthy Singapore. And there's no dispute that that happened in October of 92. You know, we've got quotes all over the place from all of Youthy USA's own witnesses. The aim was to destroy Youthy Singapore, to take it over, to gut it, right? And then it said that that goal was accomplished in October of 92 when it was gutted. It was sold to the Singapore defendants. And there was nothing left to do after that. So the key is, after that time, there was no predicate act remaining. There was nothing left for the atrium defendants or the Singapore defendants to do under this alleged scheme. Do Your Honors have any more questions? No? Okay. Well, I will stop with a little bit of time left. Thank you. Thank you very much. Counsel, I believe you have a little time left for rebuttal. Yeah, I just have two points, Your Honor. First of all, the assumption that the goal of these conspirators was simply to take over that Singapore sub is just wrong. Catherine Yip said taking over Youthy Singapore was never the end goal of the conspiracy. This is at page 131 in the excerpt to the record. It was simply a step in the plan to profit by keeping all the business and profits from that company for ourselves. Your adversary just argued that continuing harm is not sufficient to prove continuing threat of RICO violations. There was a mail and wire fraud. So that continuing to get profits doesn't make it continuing mail and wire fraud. So she argued. I think that's wrong. Continuing a harm. I mean, if you conspire to beat me up and I suffer injuries for years, no, we don't consider those years. These people intended to steal from Youthy continuously in the future, and they kept doing it. They kept doing it. Now, that's confusing. Once the money was paid as a result of the arbitral award, in what other way was your client harmed by their continuing activities? Oh, not after the payment of the award. That was much later. You're talking about after taking over the company. After taking over the company, there was a continued diversion of the business that would otherwise go to them. And that continued until 1993 when they filed suit, which is more than a year. They're claiming it was less than a year. And the case is on closed end, saying more than a year seems to be enough. So you're arguing both closed and open. Both closed and open. It lasted more than a year, and it was open-ended. And let me bring up an example I thought of. Mr. Pacific, can you take another second to explain open-ended? What is the threat of the continuing activity? They're going to keep doing it as long as they can get these customers that belong to Youthy to keep giving them the business. But they now own the business. The business was sold and paid for. They own it. Look, let me give you this example. Suppose you get a bunch of mafia types. They want to take over the drug industry in New York, which is complicated. There's a lot of different neighborhoods and drug lords. I'm familiar with New York. Okay. I know you are. So they've got a number of possible ways to do it, to kill the bosses, to compete with price. And this is going to take a long time, and they're going to get a lot of profits from this. But these guys are really good, and they succeed within a month, perhaps by killing all the drug lords. Are we going to say Congress did not consider these people racketeers just because they were good, because they accomplished their goal within a month when most people would take several years to do this? Does that make any sense? I mean, isn't this exactly the kind of people that Congress wanted to get with RICO more than anybody else? And that's what we're talking about here. These Singapore defendants were good. They did all this stuff totally secretly. The only way it was uncovered was through an anonymous letter through Uthe's CEO. He immediately filed suit, and that's what put a stop to this. But are we going to say that these people are protected because they're such talented criminals? Does that make any sense? Is that what Congress intended? I don't think so. I think open-ended goes by what you plan, not what eventually happens. I think we have your point. Any other questions the members of the panel have? Thank you very much for your argument on both sides. Thank you. The case just argued is submitted.
judges: Fernandez, M. Smith, Scheindlin